**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
─────────────────────────────────────────

**KELLY ANNE KEPPELER,**

                                        **Plaintiff,**

         **vs.**                                        **5:13-cv-1197**
                                                        **(MAD)**

**CAROLYN W. COLVIN,**

                                        **Defendant.**
─────────────────────────────────────────

**APPEARANCES:**                        **OF COUNSEL:**

**OLINSKY LAW GROUP**                   **HOWARD D. OLINSKY, ESQ.**
300 State Street
Suite 420
Syracuse, New York 13202
Attorneys for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**     **JEREMY A. LINDEN, ESQ.**
Office of Regional General Counsel
Region II
26 Federal Plaza - Room 3904
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Plaintiff commenced this action on September 25, 2013, pursuant to 42 U.S.C. §§ 405(g)

and 1383(c)(3), seeking review of a decision by the Commissioner of Social Security denying

Plaintiff's application for disability insurance benefits ("DIB") and supplemental security income

("SSI").  *See* Dkt. No. 1.

On August 16, 2010, Plaintiff filed an application for DIB and SSI, alleging a disability

onset date of August 16, 2010.  *See* Dkt. No. 8, Administrative Transcript ("T.") at 126.  This

application was denied on October 21, 2010.  T. at 134.  Plaintiff then requested a hearing and

appeared with her counsel before Administrative Law Judge ("ALJ") MaryJoan McNamara on December 1, 2011.  *Id.* at 21.  On December 29, 2011, ALJ McNamara issued a decision denying Plaintiff's application.  *See id.* at 21-35.  Plaintiff subsequently requested review by the Appeals Council and was denied such review on July 30, 2013, making the ALJ's decision the final decision of the Commissioner.  *See* T. at 1-6.

Presently before the Court are the parties' cross motions for judgment on the pleadings. Dkt. Nos. 10, 14.

## II. BACKGROUND

Plaintiff was born in 1963, and was 48 years old at the time of the hearing.  T. at 79. Before August 16, 2010, Plaintiff reported work as a care giver.  *Id.* at 81.  Plaintiff testified that as part of her job she cleaned and bathed her client, and "just [kept her client] company and [made] her content."  *Id.*

On April 6, 2010, Plaintiff presented to John F. Finkenstadt, M.D.  *See id.* at 307-09.  Dr. Finkenstadt found that Plaintiff had chronic low back pain and lumbosacral strain/dysfunction. *Id.* at 309.  He stated that he is hopeful that "with regular physical activity and smoking cessation and weight loss[,]" Plaintiff's low back pain will be kept in check.  *Id.*  Additionally, Dr. Finkenstadt noted that Plaintiff had "no acute distress[,]" that "[s]he has pain with straight leg raising[,]" and that she has "[n]o significant low back spasm."  *Id.* at 308.  Finally, Dr. Finkenstadt noted that Plaintiff "is tender in the iliolumbar, posterior sacral, and lower sacral regions on the right side only."  *Id.* at 309.

On October 1, 2010, Plaintiff presented to Jeanne A. Shapiro, Ph.D. for a consultative psychiatric examination.  *See id.* at 366-70.  Dr. Shapiro noted that Plaintiff "reports that she is able to dress, bathe, and groom herself.  She reports that she can cook and prepare food, do some

general cleaning when she feels able, laundry once a week, shopping 2-3 times a month, manage money, drive, and take public transportation." *Id.* at 368-69. Further, Dr. Shapiro opined that Plaintiff "appears to be capable of understanding and following simple instructions and directions." *Id.* at 369. Dr. Shapiro also found that Plaintiff "appears to be capable of learning new tasks[,] . . . making appropriate decisions[,] . . . relat[ing] to and interact[ing] with others moderately well[,] . . . and dealing with some stress." *Id.*

On the same day, Plaintiff presented to Kalyani Ganesh, M.D. for a consultative internal medicine examination. *See id.* at 371-74. Dr. Ganesh opined that Plaintiff "appeared in no acute distress. Gait normal. Can walk on heels and toes without difficulty. Cannot squat in full. Stance normal. Used no assistive devices. Needed no help changing for exam or getting on and off exam table. Able to rise from chair without difficulty." *Id.* at 372. According to Dr. Ganesh's medical source statement, "[n]o gross physical limitation was noted to sitting, standing, walking, and the use of upper extremities." *Id.* at 373.

On October 13, 2010, T. Inman-Dundon, a psychiatrist, completed a psychiatric review technique ("PRT") and a mental residual functional capacity ("MRFC") assessment for Plaintiff. *See id.* at 375-92. In the "B" criteria of the PRT, Dr. Inman-Dundon found mild limitations in activities of daily living, mild limitations in maintaining social functioning, moderate limitations maintaining concentration, persistence, or pace, and no episodes of deterioration of an extended duration. *Id.* at 385. Additionally, Dr. Inman-Dundon reported Plaintiff's MRFC as follows:

> Based on the totality of the [Medical Evidence Record], [claimant] is able to understand, carry out, and remember simple instructions and some complex instructions, can make simple work-related decisions. She is able to maintain attention and concentration. She can maintain a regular schedule with moderate difficulty. She can respond appropriately to supervision, coworkers, and work situations with mild to moderate limitations. She can deal appropriately with changes in a routine work setting.

*Id.* at 391.

On October 20, 2010, P. Izakson ("Izakson"), a single decision maker,[1] completed a physical residual functional capacity ("PRFC") assessment. *See id.* at 393-98. He found that Plaintiff can occasionally climb, kneel, crouch, and crawl, and can frequently balance and stoop. *Id.* at 395. Additionally, he found that Plaintiff should avoid concentrated exposure to fumes, odors, dusts, gases, and poorly ventilated areas. *Id.* at 396.

The record contains three separate mental capacity assessment worksheets regarding Plaintiff completed by Linda Schreiber, a Nurse Practitioner ("NP Schreiber"). *See id.* at 406-08, 467-69, 475-77. Plaintiff has an extensive treatment record with NP Schreiber which dates back to at least April 4, 2007. *Id.* at 357-59.

In a mental capacity assessment completed January 12, 2011, NP Schreiber found the following: in understanding and memory ("Category One"), Plaintiff had a slight limitation in understanding and remembering very short and simple instructions, and moderate limitations in her ability to remember locations and work-like procedures, and to understand and remember detailed instructions. *Id.* at 406. In sustained concentration and persistence ("Category Two"), NP Schreiber found that Plaintiff had a slight limitation in working in coordination with or in proximity to others without being distracted by them and in performing at a consistent pace with a standard number and length of rest periods, a moderate limitation in carrying out very short and simple instructions, and a marked limitation in her ability to maintain attention and concentration for extended periods and in her ability to complete a normal workday or workweek without interruptions from psychologically based symptoms. *Id.* at 406-07. In social interaction

---

[1] "Single decision makers" ("SDMs") are non-physician disability examiners who "may make the initial disability determination in most cases without requiring the signature of a medical consultant." 71 FR 45890-01.

("Category Three"), NP Schreiber found a marked limitation in Plaintiff's ability to accept instructions and respond appropriately to criticism from supervisors. *Id.* at 407. Finally, in adaptation ("Category Four"), NP Schreiber found that Plaintiff had marked limitations in responding appropriately to changes in the work setting and in her ability to travel in unfamiliar places or use public transportation. *Id.* at 408.

In a mental capacity assessment completed November 8, 2011, NP Schreiber found the following: in Category One, Plaintiff had slight limitations in remembering locations and work-like procedures and understanding and remembering very short and simple instructions, and moderate limitations in understanding and remembering detailed instructions. *Id.* at 467. In Category Two, Plaintiff had slight limitations in performing at a consistent pace with a standard number and length of rest periods, moderate limitations in working in coordination with or in proximity to others without being distracted by them, moderate limitations in carrying out very short and simple instructions or detailed instructions, maintaining attention and concentration for extended periods, performing activities within a schedule, maintaining regular attendance, being punctual within customary tolerances, and moderate limitations in completing a normal workday or workweek without interruptions from psychologically based symptoms. *Id.* at 467-68. In Category Three, NP Schreiber reported no limitations. *Id.* at 468. In Category Four, Plaintiff had slight limitations in her ability to respond appropriately to changes in the work setting, and her ability to travel in unfamiliar places or use public transportation. *Id.* at 469.

In a medical source statement completed on October 9, 2012, NP Schreiber identified 21 out of 40 possible "signs and symptoms" present in Plaintiff. *See id.* at 475-76. Further, NP Schreiber reported that Plaintiff was unable to meet competitive standards in four categories, including completing a normal workday and workweek without interruptions from

psychologically based symptoms, performing at a consistent pace without an unreasonable number and length of rest periods, dealing with normal work stress, and using public transportation. *Id.* at 476-77. Further, NP Schreiber reported that Plaintiff would be off task for more than twenty percent of an eight hour workday due to her impairments and work-related limitations. *Id.* at 477.

On May 4, 2011, Plaintiff presented to Robert S. Nolan, M.D., Ph.D., for a new patient consultation and examination. *See id.* at 472-73. Plaintiff's chief complaint was "[c]onstant low back pain for years." *Id.* at 472. Dr. Nolan reported that Plaintiff was "in no apparent distress, and that she was pleasant and well nourished." *Id.* Additionally, Dr. Nolan opined that Plaintiff's scheduled appointment with a pain management clinic was a reasonable course of action, and that "[i]f she ultimately fails conservative care [he] would recommend a [transforaminal lumbar interbody fusion] at L3/4." *Id.* at 473.

### III. DISCUSSION

**A. Legal Standards**

*1. Five-step analysis*

For purposes of SSI, a person is disabled when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382(c)(3)(A). There is a five-step analysis for evaluating disability claims:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical

evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see also Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (citations omitted). The claimant bears the burden of proof on the first four steps, while the Social Security Administration bears the burden on the last step. *Id.*

In reviewing a final decision by the Commissioner under 42 U.S.C. § 405, the Court does not determine *de novo* whether a plaintiff is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Court must examine the Administrative Record to ascertain whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *See Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 500-01 (2d Cir. 1998). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982)) (other citations omitted). In other words, this Court must afford the Commissioner's

determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health and Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.     The ALJ's Decision**

At the first step of the sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 31, 2008. T. at 23. At step two, the ALJ concluded that Plaintiff had the following severe impairments: arthritis and lumbar spondylotic changes with some lumbar disc herniation. *Id.* at 24. At the third step of the analysis, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 26. The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that Plaintiff would need a sit/stand work option. *Id.* at 27. Additionally, the ALJ found that Plaintiff "should probably be in a low stress, task oriented environment." *Id.* At step four, the ALJ found that Plaintiff has been unable to perform any past relevant work. *Id.* at 33. At the fifth and final step of the analysis, the ALJ solicited the testimony of a vocational expert. *Id.* at 33-34. The vocational expert testified that a hypothetical individual of Plaintiff's age, with her education, past relevant work experience, and RFC (as described above), could perform the representative occupations of Marker, Garment Sorter, and Electric Worker. *Id.* at 34. Respectively, these occupations are classified by the U.S. Department of Labor's Dictionary of Occupational Titles ("DOT") as: (1) job number 229.587-018, with 160,000 jobs existing nationally and 15,000 jobs existing regionally, (2) job number 222.687-010, with 150,000 jobs existing in the national economy and 14,000 jobs existing regionally, and (3) job number 726.687-010, with 140,000 jobs

existing in the national economy and 14,000 jobs existing in the region. *Id.* The ALJ relied on this testimony to determine that Plaintiff was not disabled as defined by the Social Security Act. *Id.* at 34-35.

**C.    Analysis**

### *1. The ALJ properly determined Plaintiff's physical residual functional capacity*

Plaintiff argues that "there is no support in the record for the ALJ's assessment of Plaintiff's postural functional capacity." Dkt. No. 10 at 19. She further alleges that the only acceptable medical opinion on Plaintiff's physical limitations was the opinion of Dr. Ganesh, "which did not contain any assessment of Plaintiff's postural limitations." *Id.* Therefore, Plaintiff argues that the ALJ's postural functional capacity assessment is unsupported by substantial evidence, and that "the ALJ should have contacted Plaintiff's treating source, ordered a consultative examination, or consulted a medical expert to determine Plaintiff's limitations." *Id.* at 20.

Defendant argues that the ALJ did not commit error, because while the ALJ could not give Izakson any weight, the ALJ gave Plaintiff the benefit of the doubt as to "her alleged lumbar spine impairments, as well as her alleged asthma condition, [and] included postural and environmental limitations that were similar to those that Izakson had also found." Dkt. No. 14 at 14. Defendant also argues that while Plaintiff contends that the ALJ should have obtained assessments of Plaintiff's functional abilities, the standard that applied to the ALJ's duty is different from the current regulations, and under the prior standard the record was fully developed. *Id.* at 14-15. According to Defendant, "an ALJ did not have a duty to re-contact a treating physician if the evidence the treating source submitted, as a whole, was complete." *Id.* at 15 (citing *Hluska v. Astrue*, No. 06-cv-0485, 2009 WL 799967, *17 (N.D.N.Y. Mar. 25, 2009)).

As mentioned above, "single decision makers" ("SDMs") are non-physician disability examiners who "may make the initial disability determination in most cases without requiring the signature of a medical consultant." 71 FR 45890-01. However, "assigning any evidentiary weight to an SDM's opinion is an error." *Martin v. Astrue*, No. 7:10-cv-1113, 2012 WL 4107818, *15 (N.D.N.Y. Sept. 19, 2013). Additionally, while assigning weight to an SDM is error, if an ALJ "does not give much weight to the opinion" of the SDM, "it does not constitute a basis for remand." *Id.* at *16.

The Court holds that even assuming the ALJ did give some weight to the SDM, it is harmless, because "the ALJ found that [Plaintiff] was *more* functionally limited than the agency consultant[] opined." *Sears v. Astrue*, No. 2:11-cv-138, 2012 WL 1758843, *6 (D. Vt. May 15, 2012) (emphasis in original). Dr. Ganesh reported no physical limitations in his consultative examination, and the ALJ gave great weight to his examination. T. at 32, 373. Therefore, the only effect that Izakson's report had on the ALJ's determination was to limit Plaintiff's PRFC more than Dr. Ganesh opined.

Additionally, the Court finds that the ALJ sufficiently developed the record in order to determine Plaintiff's PRFC. The record contains extensive treatment notes from NP Schreiber (*id.* at 310-65, 409-24), Dr. Finkenstadt's consultative examination (*id.* at 307-09), treatment records from Plaintiff's examination at the Spine and Wellness Center (*id.* at 425-30), Dr. Nolan's new patient consultation/examination record (*id.* at 472-73), and Dr. Ganesh's consultative examination (*id.* at 371-74). The ALJ found that the treating records were consistent with Dr. Ganesh's opinion. *Id.* at 32.

In *Selinsky v. Comm'r of Soc. Sec.*, No. 08-cv-1363, 2010 WL 2671502, *4-5 (N.D.N.Y. June 14, 2010) *adopted by* 2010 WL 2671499 (N.D.N.Y. June 30, 2010), the court remanded for

further administrative proceedings because the "ALJ's RFC assessment is not directly supported by any of the medical source evidence." *Id.* at *5. In that case, the consultative examiner's opinion "provided support for the nurse practitioner's determination[,]" and the ALJ ignored the consultative examiner and state agency reviewing consultant's opinions when determining the plaintiff's RFC. *Id.*

In contrast to *Selinsky*, Dr. Ganesh's opinion does not support NP Schreiber's assessments, and the ALJ's PRFC determination is consistent with Dr. Ganesh's medical opinion and the majority of treatment records. Although NP Schreiber did not submit a medical opinion, this "will not, by itself, necessarily render the record incomplete." *Beach v. Comm'r of Soc. Sec.*, No. 7:13-cv-323, 2014 WL 859167, *3 (N.D.N.Y. Mar. 5, 2014); *see also* 20 C.F.R. § 404.1513(b)(6). Additionally, "the ALJ had before [her Plaintiff's] extensive treatment records, objective medical evidence, . . . and a medical expert's opinion with regard to [Plaintiff's] functional capabilities." *Beach*, 2014 WL 859167 at *2. Accordingly, remand to further develop the record is not required in this case.

Finally, the Court disagrees with Plaintiff's contention that the ALJ's PRFC determination is not based on substantial evidence. "State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole." *Cobb v. Comm'r of Soc. Sec.*, No. 5:13-cv-591, 2014 WL 4437566, *6 (N.D.N.Y. Sept. 9, 2014) (quoting *Leach ex. Rel. Murray v. Barnhart,* No. 02 Civ. 3561, 2004 WL 99935, *9 (S.D.N.Y. Jan. 22, 2004)). As Dr. Ganesh's opinion "may constitute substantial evidence[,]" the ALJ may rely on it as long as his opinion is "consistent with the record as a whole." *Id.* Additionally, while Plaintiff is correct that Dr. Ganesh provided the only medical opinion evidence of record regarding Plaintiff's PRFC,

"[o]ther evidence from medical sources, such as medical history, opinions, and statements about treatment . . . received" may also constitute evidence. 20 C.F.R. § 416.912(b)(2). Accordingly, upon review of the extensive medical evidence record, the Court finds that substantial evidence supports the PRFC determination.

### 2. *The ALJ properly determined Plaintiff's mental residual functional capacity*

#### a. *Dr. Inman-Dundon and Dr. Shapiro*

Plaintiff argues that the ALJ "failed to reconcile the opinion of Dr. Inman-Dundon, which she gave 'great weight' with her assessment of Plaintiff's RFC." Dkt. No. 10 at 20. First, Plaintiff argues that the ALJ's determination of Plaintiff's ability to maintain attention and concentrate as necessary is not supported by Dr. Inman-Dundon's diagnosis of moderate limitations in this area. *Id.* Second, Dr. Inman-Dundon's determination that Plaintiff had moderate limitations in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances is not reflected in Plaintiff's RFC, "which noted that Plaintiff 'is able to attend to a routine, maintain a schedule, and learn new tasks.'" *Id.* Third, Dr. Inman-Dundon's finding of moderate limitations in Plaintiff's "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods . . . conflicts with the ALJ's determination that Plaintiff 'is able to maintain attention and concentration' and 'able to attend to a routine [and] maintain a schedule.'" *Id.* Finally, Plaintiff alleges that Dr. Inman-Dundon's finding of moderate limitations regarding Plaintiff's "ability to interact appropriately with the general public and accept instructions and respond appropriately to criticism from supervisors" was not reconciled with the portion of the RFC that states Plaintiff "'is able to interact and respond to others appropriately.'" *Id.* at 21.

In opposition, Defendant argues that the ALJ must consider the "Functional Capacity Assessment" portion of Dr. Inman-Dundon's MRFC assessment rather than the summary conclusions section. Dkt. No. 14 at 11-12. Accordingly, Defendant argues that "Dr. Inman-Dundon's functional capacity assessment . . . was overall consistent with CE Dr. Shapiro's opinion and the ALJ's RFC determination[.]" *Id.*

The Court agrees with Defendant that "[p]art I of the form . . . did not constitute the RFC[,]" and that "[s]ection III of the form is the actual RFC Assessment." *Ferguson v. Astrue*, No. 09-cv-697s, 2010 WL 7746198, *6 (W.D.N.Y. July 30, 2010); *see also* POMS Section DI 24510.060(B)(4)(a). Therefore, the Court will determine whether the ALJ's MRFC is consistent with section III of Dr. Inman-Dundon's MRFC assessment.

Dr. Inman-Dundon's MRFC assessment reads as follows:

> Based on the totality of the MER, [Plaintiff] is able to understand, carry out, and remember simple instructions and some complex instructions, can make simple work-related decisions. She is able to maintain attention and concentration. She can maintain a regular schedule with moderate difficulty. She can respond appropriately to supervision, coworkers, and work situations with mild to moderate limitations. She can deal appropriately with changes in a routine work setting.

T. at 391. Dr. Shapiro's MRFC assessment is also implicated in the ALJ's RFC determination. It reads as follows:

> Vocationally, [Plaintiff] appears to be capable of understanding and following simple instructions and directions. Barring any medical contraindications, she appears to be capable of performing simple and some complex tasks with supervision and independently but in moderation. She appears to be capable of maintaining attention and concentration for tasks. She can regularly attend to a routine and maintain a schedule. She appears to be capable of learning new tasks. She appears to be capable of making appropriate decisions. She appears to be able to relate to and interact moderately well with others. She appears to be capable of dealing with some stress.

*Id.* at 369.  The ALJ's MRFC determination provides:

> [Plaintiff] is able to understand and follow simple directions and
> instructions.  The [Plaintiff] is also able to follow simple and
> complex tasks both individually and with supervision.  She is able
> to maintain attention and concentration as necessary.  She is able to
> attend to a routine, maintain a schedule, and learn new tasks.  She is
> able to interact and respond to others appropriately.  The claimant
> should probably be in a low stress, task oriented environment.

*Id.* at 27.

The Court finds that the ALJ's MRFC determination is mostly consistent with Dr. Inman-Dundon's and Dr. Shapiro's assessments.  Further, although a portion of the MRFC determination is inconsistent with the medical opinions, the Court finds that this amounted to harmless error.

Both Drs. Inman-Dundon and Shapiro opined that Plaintiff had some limitation in interacting with others.  *Id.* at 369-91.  Although the ALJ did not expressly state these diagnoses, the ALJ indicated that Plaintiff "should probably be in a low stress, task oriented environment[,]" there is no indication whether this was in recognition of Plaintiff's limitation in interacting with others.  Moreover, as discussed further on in this Memorandum-Decision and Order, the vocational expert found that Plaintiff could work in jobs that require only minimal interaction with others.  Therefore, any error in the ALJ's MRFC determination was harmless.

Based on the foregoing, the Court finds that the ALJ properly determined Plaintiff's MRFC, because any error she committed in the determination resulted in harmless error.

### b. Nurse Practitioner Schreiber

Plaintiff alleges that NP Schreiber's opinion and treatment records should have been afforded greater weight than the ALJ gave them, because her "opinion is well-supported by the objective evidence of record, as well as Plaintiff's testimony."  Dkt. No. 10 at 21.  Further Plaintiff argues that NP Schreiber's extensive treatment relationship with Plaintiff entitled her

opinion to greater weight than it received. *Id.* at 22.

Defendant argues that NP "Schreiber's extremely restrictive assessment is inconsistent with the evidence as a whole[,]" and that "the relatively benign objective evidence provided by [her] treatment notes did not support her extremely restrictive assessments regarding plaintiff's mental functioning." Dkt. No. 14 at 8. Accordingly, Defendant contends that "the clinical psychological findings during the relevant period from plaintiff's other treatment providers were quite mild." *Id.* at 10.

In *Orts v. Astrue*, No. 5:11-512, 2012 WL 6803588, *11-12 (N.D.N.Y. Nov. 14, 2012), the court found that the ALJ did not err in discounting the opinion of a nurse practitioner regarding the plaintiff's MRFC. *Id.* Specifically, the court found no legal error "because [the nurse practitioner] clearly lack[ed] specialization in the field of mental health, and also because [the ALJ's] residual functional capacity finding regarding [the plaintiff's] mental capacities [was] supported by opinions of acceptable medical sources who [did] specialize in that field[.]" *Id.* at *12. Additionally, the court noted that the ALJ did give the nurse practitioner some weight because he "*did* consider and give some weight to [the nurse practitioner's] *medical* opinions when she determined [the plaintiff's] residual function capacity." *Id.* at *11.

The Court finds that the current case is similar to *Orts*, and that the ALJ did not err in discounting NP Schreiber's opinion of Plaintiff's MRFC. Just as in *Orts*, NP Schreiber lacks a specialization in the field of mental health, and acted as Plaintiff's primary care physician, seeing Plaintiff for regular checkups on both her physical and mental ailments. *See* T. at 310-51, 409-24, 450-65. Further, the ALJ's MRFC determination is supported by Dr. Inman-Dundon's and Dr. Shapiro's medical opinions. Finally, similar to *Orts*, the ALJ gave NP Schreiber's treatment records more than zero weight, because the ALJ found NP Schreiber's treatment notes at least

partially credible in regard to Plaintiff's "back pain and . . . [her] search for alternative treatments for her back." *Id.* at 32.

Based on the foregoing, the Court holds that the ALJ did not err in giving NP Schreiber's treatment records and opinion on Plaintiff's MRFC little weight, because NP Schreiber is not a specialist in the field of mental health.

### 3. *The ALJ made a proper credibility determination regarding Plaintiff's testimony*

"The ALJ has discretion to assess the credibility of a claimant's testimony regarding disabling pain and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). The regulations set out a two-step process for assessing a claimant's statements about pain and other limitations:

> At the first step, the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged. . . . If the claimant does suffer from such an impairment, at the second step, the ALJ must consider "the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" of record. . . . The ALJ must consider "[s]tatements [the claimant] or others make about [his] impairment(s), [his] restrictions, [his] daily activities, [his] efforts to work, or any other relevant statements [he] makes to medical sources during the course of examination or treatment, or to [the agency] during interviews, on applications, in letters, and in testimony in [its] administrative proceedings."

*Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (quotations and citations omitted).

If a plaintiff's testimony concerning the intensity, persistence or functional limitations associated with his impairments is not fully supported by clinical evidence, the ALJ must consider additional factors in order to assess that testimony, including the following: (1) daily activities; (2) location, duration, frequency, and intensity of any symptoms; (3) precipitating and

aggravating factors; (4) type, dosage, effectiveness and side effects of any medications taken; (5) other treatment received; and (6) other measures taken to relieve symptoms. 20 C.F.R. § 416.929(c)(3)(i)-(vi). The issue is not whether the clinical and objective findings are consistent with an inability to perform all substantial activity, but whether the plaintiff's statements about the intensity, persistence, or functionally limiting effects of his symptoms are consistent with the objective medical and other evidence. *See* SSR 96-7p, Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 1996 WL 374186, *2 (Soc. Sec. Admin. July 2, 1996). One strong indication of credibility of an individual's statements is their consistency, both internally and with other information in the record. *Id.* at *5.

"After considering plaintiff's subjective testimony, the objective medical evidence, and any other factors deemed relevant, the ALJ may accept or reject claimant's subjective testimony." *Saxon v. Astrue*, 781 F. Supp. 2d 92, 105 (N.D.N.Y. 2011) (citing, *inter alia*, 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4)). An ALJ rejecting subjective testimony "'must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his decision is supported by substantial evidence.'" *Melchior v. Apfel*, 15 F. Supp. 2d 215, 219 (N.D.N.Y. 1998) (quoting *Brandon v. Bowen*, 666 F. Supp. 604, 608 (S.D.N.Y. 1987)). The Commissioner may discount a plaintiff's testimony to the extent that it is inconsistent with medical evidence, the lack of medical treatment, and her own activities during the relevant period. *See Howe-Andrews v. Astrue*, No. CV-05-4539, 2007 WL 1839891, *10 (E.D.N.Y. June 27, 2007). With regard to the sufficiency of credibility determinations, the Commissioner has stated that

> [i]t is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or

that "the allegations are (or are not) credible."  It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms.  The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96-7p, 1996 WL 374186, at *2.

Plaintiff argues that the ALJ improperly relied on Plaintiff's reported activities of daily living to determine her PRFC, and that the ALJ failed to consider all the relevant factors in her credibility analysis.  Dkt. No. 10 at 23-25.  Specifically, Plaintiff claims that "'it is well-settled that the performance of basic daily activities does not necessarily contradict allegations of disability, 'as people should not be penalized for enduring the pain of their disability in order to care for themselves.'" *Id.* at 24 (citing *Stoesser v. Comm'r of Soc. Sec.*, No. 08-cv-643, 2011 WL 381949, *19 (N.D.N.Y. Jan. 19, 2011)).  Further, Plaintiff argues that the ALJ's determination of "light depression" is not supported by the medical evidence in the record, and that "[t]he record and Plaintiff's diagnosis actually support[] Plaintiff's allegations of depression and anxiety, and therefore support[] Plaintiff's credibility."  Dkt. No. 10 at 24.  Finally, Plaintiff asserts that "the ALJ failed to consider the type, dosage, effectiveness, and side effects of the numerous medications Plaintiff took to try to alleviate her depression[,]" and that "[t]he ALJ also failed to consider Plaintiff's efforts to control her back pain in assessing Plaintiff's statements concerning the severity of her symptoms."  *Id.* at 24-25.

In response, Defendant contends that "the ALJ fully considered the impact of [P]laintiff's subjective allegations of pain and other symptoms on her ability to work."  Dkt. No. 14 at 17.  Specifically, Defendant alleges that "the totality of the medical evidence does not corroborate [P]laintiff's subjective symptomatology to the extent alleged."  *Id.* at 18.  Further, Defendant

claims that Plaintiff's reported activities of daily living do not support her disability claim, and that "the ALJ appropriately used her discretion as fact-finder to determine that [P]laintiff's statements about her limitations were not entirely credible." *Id.* at 18.

The ALJ's determination regarding Plaintiff's statement provides as follows:

> I considered the claimant's testimony and as well the evidence presented. I did not find the claimant's testimony with regard to the severity of her symptoms, especially her depression, to be supported in the medical records. I also did not find her impairments to be at the level of severity that would preclude her from working at the light level of exertion with the limitations I have adopted based on all of the evidence.

T. at 29.

While the Court agrees with Plaintiff that the ALJ may not penalize people for enduring the pain of their disabilities, the ALJ's decision makes clear that he considered the objective medical testimony when he determined Plaintiff's PRFC, and did not rely solely on her activities of daily living. The ALJ referenced Dr. Finkenstadt's and Dr. Tiso's examinations, both of which recommended that Plaintiff get more exercise. *Id.* The ALJ concluded that "there is nothing in [Dr. Finkenstadt's] evaluation that suggests the claimant is even close to disabled because of her back." *Id.* The ALJ also relied on Dr. Ganesh's consultative examination which "did not demonstrate *any* gross physical limitation to sitting, standing, walking, and use of her upper extremities." *Id.* at 30. Further, in regard to the ALJ's alleged reliance on Plaintiff's activities of daily living, "the issue is not whether Plaintiff's limited ability to undertake normal daily activities demonstrates her ability to work. Rather, the issue is whether the ALJ properly discounted Plaintiff's testimony regarding her symptoms to the extent that it is inconsistent with other evidence." *Morris v. Comm'r of Soc. Sec.*, No. 5:12-cv-1795, 2014 WL 1451996, *8 (N.D.N.Y. Apr. 14, 2014).

19

Regarding the ALJ's diagnosis of light depression, Dr. Shapiro found only that Plaintiff had an adjustment disorder with depressed mood (T. at 369), and Dr. Inman-Dundon only noted that NP Schreiber found that Plaintiff had depression and anxiety, but did not include any restrictions based on depression in his functional capacity assessment. *Id.* at 391. The ALJ's decision to give great weight to the opinions of Dr. Shapiro and Dr. Inman-Dundon and little weight to NP Schreiber's opinion is supported by substantial evidence; and, therefore, the Court finds that the ALJ did not err in her determination that Plaintiff's depression did not rise to the level of "Major Depression Recurrent." *Id.* at 30.

As explained above, Plaintiff's testimony was not consistent with the medical evidence record regarding her physical limitations, and the ALJ discussed the evidence that contradicted Plaintiff's testimony in her decision. "Taken as a whole, the record supports the ALJ's determination that Plaintiff was not entirely credible." *Morris*, 2014 WL 1451996 at *8.

Based on the foregoing, the Court finds that the ALJ properly determined that Plaintiff's testimony was not credible in light of the objective medical evidence.

### 4. The hypothetical given to the vocational expert

Plaintiff first alleges that due to errors in the ALJ's RFC and credibility determination, the vocational expert relied on an incomplete hypothetical question. Dkt. No. 10 at 26. Accordingly, Plaintiff argues that "the ALJ's hypothetical failed to include significant nonexertional limitations that would erode the job base available to Plaintiff." *Id.*

In response, Defendant contends that because the RFC and credibility determinations are supported by substantial evidence, the hypothetical question was complete. Dkt. No. 14 at 19. Therefore, Defendant argues that "the ALJ's determination that work existed in the national economy that [P]laintiff could perform is supported by substantial evidence and should be

upheld." *Id.*

As discussed above, the Court has determined that the ALJ relied on substantial evidence when she determined Plaintiff's RFC and when she assessed Plaintiff's credibility. "The Commissioner may rely on a vocational expert's testimony concerning the availability of jobs suited to a hypothetical person's capabilities so long as the hypothetical is based on substantial evidence." *Mancuso v. Astrue*, 361 Fed. Appx. 176, 178 (2d Cir. 2010) (citing *Dumas v. Schweiker*, 712 F.2d 1545, 1553-54 (2d Cir. 1983)). However, to the extent that the ALJ did not take into account Plaintiff's nonexertional limitation in interacting and relating with others, the Court finds that this resulted in harmless error.

The first occupation the vocational expert found Plaintiff could perform was that of either a marker or a ticketer.[2] T. at 117. Neither of these positions require that the worker interact with people in any way. *See Marking Clerks*, OCCUPATIONAL INFO. NET. (last modified Aug. 11, 2006), http://www.occupationalinfo.org/onet/58021.html. Next, the vocational expert found that Plaintiff could work as a garment sorter. T. at 117. The description for this job provides: "[s]orts finished garments, such as shirts, dresses, and pajamas, according to lot and size numbers recorded on tags and labels attached to garments. May fold and package garments in boxes and bags. May iron garments prior to folding . . . . May be designated according to garment sorted as Shirt Sorter (garment)." *See Garment Sorter*, OCCUPATIONAL INFO. NET. (last modified May 26, 2003), http://www.occupationalinfo.org/22/222687014.html. Finally, the vocational expert found that Plaintiff could work as an electronics worker. T. at 117. The description for this job

---

[2] The vocational expert referenced the DOT job number for a ticketer, but stated that the position was a marker. T. at 117. Therefore, the Court will look at the broader category that both workers fall under, labeled "Marking Clerk." *See Marking Clerks*, OCCUPATIONAL INFO. NET. (last modified Aug. 11, 2006), http://www.occupationalinfo.org/onet/58021.html.

provides as follows:

> Performs any combination of following tasks to clean, trim, or
> prepare components or parts for assembly by other workers:
> Receives verbal or written instructions from supervisor regarding
> work assignment.  Cleans and deglosses parts, using cleaning
> devices, solutions, and abrasives.  Trims flash from molded or cast
> parts, using cutting tool or file.  Applies primers, plastics,
> adhesives, and other coatings to designated surfaces, using
> applicators, such as spray guns, brushes, or rollers.  Fills shells,
> caps, cases, and other cavities with plastic encapsulating fluid or
> dips parts in fluid to protect, coat, and seal parts.  Prepares wires for
> assembly by measuring, cutting, stripping, twisting, tinning, and
> attaching contacts, lugs, and other terminal devices, using
> handtools, and power tools and equipment.  Positions and fastens
> together parts, such as laminates, electron tube mounts and cages,
> variable capacitor rotors and stators, paper loudspeaker cones,
> faceplates, and shells and cases for various electronic components,
> using handtools and power tools.  Prints identifying information on
> components and parts, using silk screen, transfer press, or
> electro-etch printing devices, or ink pad and stamp.  Moves parts
> and finished components to designated areas of plant, such as
> assembly, shipping and receiving, or storage.  Loads and unloads
> parts from ovens, baskets, pallets, and racks.  Disassembles and
> reclaims parts, using heating equipment and handtools.

*Electronics Worker*, OCCUPATIONAL INFO. NET. (last modified May 26, 2003),

http://www.occupationalinfo.org/72/726687010.html.  Although as an electronics worker Plaintiff

would be required to receive "verbal or written instructions from [a] supervisor regarding work

assignments," the Court finds that the ALJ properly determined in her MRFC that Plaintiff is

"able to understand and follow simple directions and instructions."  T. at 27.  Therefore, the

position of electronics worker does not conflict with a limitation in interacting and relating with

others, as an electronics worker is only required to interact minimally with other people while

receiving instructions.  Further, working as a marker or a garment sorter would also only require

that Plaintiff interact with other people on a minimal basis.

As the three positions the vocational expert found Plaintiff could perform do not require

22

interacting with others in more than a limited capacity, any error by the ALJ in Plaintiff's MRFC was harmless.

Based on the foregoing, the Court finds that the ALJ properly relied on the vocational expert's testimony.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion for judgment on the pleadings is **DENIED**; and the Court further

**ORDERS** that Defendant's motion for judgment on the pleadings is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendant's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated:  March 31, 2015
         Albany, New York

Mae A. D'Agostino
U.S. District Judge